UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BRIDGET PETERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-00942 (ESH) |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **GOVERNMENT,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Bridget Peterson, an African American, is employed by the District of Columbia at Saint Elizabeth's Hospital. She sues the District for race discrimination in violation of 42 U.S.C. § 1981 and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.* (2001). She also sues her former supervisor, Dr. Alan Abrams, for defamation. Defendants have filed a motion for summary judgment and, for the reasons set forth herein, the motion will be granted.

**BACKGROUND**[1]

---

[1] As a threshold matter, the Court notes that plaintiff has failed to comply with Local Civil Rule 56.1 (identical to Local Civil Rule 7(h)), which requires a plaintiff opposing summary judgment to provide "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," together with supporting record citations. Local Civ. R. 56.1. Although plaintiff has submitted a "Statement of Material Facts as to Which There Is No Dispute," she has failed to identify which, if any, material facts *are* in dispute. Moreover, with few exceptions, she has failed to provide supporting record citations.

Rule 56.1 is designed to help the Court "maintain docket control and . . . decide motions for summary judgment efficiently and effectively." *Valles-Hall v. Ctr. for Nonprofit Advancement*, --- F. Supp. 2d ---, ---, 2007 WL 779385, at *1 (D.D.C. 2007) (quoting *Jackson v. Finnegan, Henderson, Farabow, Garret & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996)). "Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes. . . . The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and

Having worked at Saint Elizabeth's Hospital in various capacities since 1973, plaintiff accepted a position as program coordinator in 2000 for the Psychiatry Residency Training Program ("PRTP"). (Def.'s Stmt. ¶¶ 1, 5.) As program coordinator, plaintiff was initially supervised by Dr. David Joseph, who served as director of the PRTP. (*Id.* ¶ 6.) According to plaintiff, her duties included "[w]orking with the establishment and the setting up [of] all training involvement around every resident that became a part of the program." (*Id.* ¶ 7 (alterations in original) (quoting plaintiff's deposition testimony).)

In 2004, the PRTP lost two clerical employees, and plaintiff alleges that she attempted to take on their work in addition to her own. (*See id.* ¶¶ 8, 10.) Associated "pressures" caused plaintiff to take a two-month medical leave, beginning on August 4, 2004. (*Id.* ¶ 10 (quoting plaintiff's deposition testimony).) While plaintiff was away, Dr. Joseph resigned as director of the PRTP. (*Id.*)

Upon plaintiff's return, the PRTP continued to operate at a clerical deficit, and the director's position was vacant. (*Id.* ¶ 11.) According to plaintiff, Dr. Abrams was hired as part-time director on February 9, 2005. (*Id.* ¶ 12.) He transitioned to full-time employment in April 2005. (*Id.*)

Plaintiff alleges that, in late March 2005, she began hearing "rumors" that Dr. Abrams and two other hospital administrators, Joy Holland (an African-American woman) and Gerald

---

identifies the pertinent parts of the record." *Id.* (omission in original) (quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980)). Accordingly, "the Court has treated as admitted all facts alleged by [d]efendant[s] in [their] Statement and not specifically contradicted by [p]laintiff in her Statement." *Id.* --- F. Supp. 2d at ---, 2007 WL 779385, at *2. "The Court has also considered the facts adduced by [p]laintiff in her Statement, to the extent that they are supported by record evidence, and cites directly to the record, where appropriate, to provide additional information not covered in either of the parties' statements." *Id.*

Tolliver, wanted to transfer her out of her position as the PRTP's program coordinator. (Def.'s Ex. B ["Pl.'s Dep. Vol. II"] at 132–33, 138.) Indeed, the record reflects that, on March 28, 2005, Holland ("[t]hru" Tolliver) filed paperwork to initiate the process of moving plaintiff from the PRTP to the hospital's "Engineering and Maintenance" department. (Def.'s Stmt. ¶ 23; *see* Def.'s Ex. E.)

In April 2005, Dr. Abrams reassigned some of plaintiff's duties to Dale Sanders (an African-American woman). (*See* Pl.'s Stmt. ¶¶ 15–16;[2] Pl.'s Dep. Vol. II at 147.) Plaintiff further alleges that, on at least three occasions that April, Dr. Abrams criticized her performance in front of others or spoke to her in a threatening manner. (*See* Def.'s Stmt. ¶¶ 19–20; Pl.'s Dep. Vol. II at 186, 189, 194–98.)

On April 26, 2005, at plaintiff's request, Dr. Abrams drafted a handwritten note authorizing plaintiff "to request assistance in performing [her] duties." (Def.'s Stmt. ¶ 21 (quoting the note); Def.'s Ex. C; *see* Def.'s Ex. D.) Dissatisfied with the note, plaintiff wrote Dr. Abrams a formal memorandum, in which she stated:

> Your note reflects "full permission to request assistance in performing *your duties*." For the record, *I do not need assistance in performing my duties*. I need you to provide clerical assistance to support the Psychiatry Residency Training Program as a whole, *not to interrupt the performance of my duties*. Please take the time to review my position description carefully, which does not reflect my responsibility for processing time and attendance sheets, although I did them in the past when clerical staff were not available as a courtesy without threats to put in my resignation and progressive disciplinary action . . . .

(*Id.*) Plaintiff's memorandum also included a request that she be "immediately

---

[2]The paragraphs of plaintiff's Statement are misnumbered. For purposes of this Opinion, the Court has renumbered plaintiff's second "Paragraph 12" as "Paragraph 15." The subsequent paragraphs are renumbered accordingly.

transferred from the Psychiatry Residency Training Program and [the] direction" of Dr. Abrams.  (*Id.*)

After circulating the memorandum, plaintiff took medical leave.  (Def.'s Stmt. ¶ 22.)  She returned to work on May 1, 2005, after learning that she had been reassigned from the PRTP to Engineering and Maintenance.  (*See id.* ¶ 24; Def.'s Ex. A ["Pl.'s Dep. Vol. I"] at 11, 92.)  Plaintiff's transfer to Engineering and Maintenance was "budget neutral" and did not reduce her compensation or benefits.  (Def.'s Stmt. ¶ 23.)

## ANALYSIS

"The legal standards applicable to race discrimination are the same under the DCHRA and [§] 1981."  *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (quoting *Beckwith v. Career Blazers Learning Ctr. of Wash., D.C., Inc.*, 946 F. Supp. 1035, 1048 (D.D.C. 1991)).  Under either law, the parties' respective burdens of persuasion and production are the same as in Title VII discrimination cases.  *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997).  Thus, absent direct evidence of discrimination, "it is appropriate for the Court to analyze [a § 1981 or DCHRA] claim under the three-step Title VII framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Moncrief v. Daro Realty, Inc.*, No. 03-762, 2005 WL 1119794, at *10 (D.D.C. Apr. 28, 2005).  Under the *McDonnell Douglas* framework, a plaintiff must first "establish a *prima facie* case of discrimination by a preponderance of the evidence."  *Id.*  To do so, "the plaintiff must show that '(1) she is a member of [a] protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"  *Id.* (alteration in original) (footnote omitted) (quoting *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150

(D.C. Cir. 2004)).  "If the plaintiff is able to establish her *prima facie* case by a preponderance of the evidence, the burden of production switches to the [defendant] employer to 'articulate a legitimate, nondiscriminatory reason for its actions.'"  *Fox v. Giaccia*, 424 F. Supp. 2d 1, 7 (D.D.C. 2006) (quoting *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002)).  "The plaintiff must then demonstrate that the . . . stated reason was pretextual and that the true reason was discriminatory."  *Id.* (quoting *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002)).

Here, although there is no dispute that plaintiff belongs to a protected class (African American), her pleadings do not clearly identify what adverse employment actions she claims to have suffered.  Her opposition appears to suggest that she claims to have suffered three such actions: Dr. Abrams's reassignment of plaintiff's duties to Sanders, his request that plaintiff perform certain clerical duties for the PRTP, and plaintiff's transfer to Engineering and Maintenance.  (*See* Opp. at 16.)  Assuming *arguendo* that those actions are adverse employment actions from which one can infer discrimination (which is far from clear), the District has articulated a legitimate, nondiscriminatory explanation: "[T]he record is replete with plaintiff's comments that she needed help to perform her job functions," and the actions at issue were taken to alleviate plaintiff's stress.  (Reply at 8; *see id.* at 10 (characterizing plaintiff's transfer as an effort "to move a longtime employee to a position where she did not have the same job demands and stressors").)

Thus, plaintiff's § 1981 and DCHRA claims can survive summary judgment only if a reasonable trier of fact could conclude from the available evidence both that the explanation articulated by the District is pretextual, and that plaintiff suffered discrimination because of her race.  *See, e.g.*, *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005) (stating that the dual

inquiry at this stage of the *McDonnell Douglas* analysis is "[whether] a reasonable jury [could] infer that the employer's given explanation was pretextual, and, if so, [whether] the jury [could] infer that this pretext shielded discriminatory motives"); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998) (en banc) ("[T]here may be no legitimate jury question as to discrimination in a case in which the plaintiff has created only a weak issue of material fact as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred.").

     No reasonable trier of fact could conclude that the actions at issue here were racially motivated.  The argument that race motivated Dr. Abrams's decision to transfer some of plaintiff's duties to Sanders is undercut by the fact that Sanders, like plaintiff, is African American.  *See, e.g.*, *Murray*, 406 F.3d at 715 ("While [the plaintiff] can make out a prima facie case despite such parity, a replacement within the same protected class cuts strongly against any inference of discrimination." (citations omitted)).  The argument that Dr. Abrams assigned timekeeping and secretarial duties to plaintiff because of her race is equally dubious.  It is undisputed that the PRTP was operating at a clerical deficit, and plaintiff has herself admitted that, under Dr. Abrams's predecessor, she willingly processed time and attendance sheets "when clerical staff were not available."  (Def.'s Ex. D.)  As for the argument that plaintiff's transfer to Engineering and Maintenance was racially motivated, the only evidence is that a "foreigner," whom plaintiff "would say [was] white," was hired to perform some of plaintiff's former duties.  (Pl.'s Dep. Vol. II at 171.)  Such evidence is at best marginally probative given that the person hired, a doctor, had qualifications that plaintiff lacked.  (*See id.*)  Any possible inference of discrimination based on the race of plaintiff's successor at the PRTP is also undermined by the

evidence that one of the people to initiate plaintiff's transfer (Holland) is African American, by the fact that plaintiff herself ultimately requested the transfer, and, most significantly, by *plaintiff's express admission* that her transfer was not racially motivated. (*See id.* at 138, 139; Def.'s Ex. D.)

Accordingly, the District is entitled to summary judgment on plaintiff's § 1981 and DCHRA claims. Because plaintiff's only federal claim will be dismissed before trial, the Court declines to exercise supplemental jurisdiction over plaintiff's defamation claim.[3] *See, e.g.*, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted by separate order.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: May 3, 2007

---

[3] Plaintiff's complaint does not assert jurisdiction pursuant to 29 U.S.C. § 1332, and there is no evidence of diversity of citizenship between plaintiff and Dr. Abrams. (*See* Cmpl. ¶ 2 ("Jurisdiction of this court is based upon 42 U.S.C. § 1981 and the D.C. Human Rights Act.").)